```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                             )
                                   )    Chapter 7
WALTERMAN IMPLEMENT, INC.          )
                                   )    Bankruptcy No. 05-07284
      Debtor.                      )
-----------------------------      )
RENEE HANRAHAN, TRUSTEE            )
                                   )    Adversary No. 07-09039
      Plaintiff,                   )
                                   )
vs.                                )
                                   )
GRUNDY COUNTY FARM SERVICE         )
AGENCY                             )
                                   )
      Defendant.                   )
```

**ORDER RE: TRUSTEE'S COMPLAINT TO RECOVER PREFERENCE**

This matter came before the undersigned on September 28, 2007 for a status conference to set trial date. Attorney Eric Lam represented Plaintiff/Trustee Renee Hanrahan. Attorney David Morse represented Defendant Grundy County Farm Service Agency (FSA). At the time of the hearing, the parties agreed to submit this case on stipulated facts and briefs and the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

**STATEMENT OF THE CASE**

Trustee seeks to avoid a $10,442 transfer by Debtor to FSA as a voidable preference pursuant to 11 U.S.C. § 547(b) and recover the property transferred pursuant to § 550. The parties stipulated that Trustee satisfied her burden of proof on all § 547(b) preference elements and the Court entered a consent order on August 30, 2007 granting Trustee summary judgment on her case in chief. The remaining issues for decision are FSA's § 547(c)(2) ordinary course of business defense and its assertion of immunity from recovery under § 550(a)(1).

**STATEMENT OF FACTS**

The facts are determined by the parties' Amended Fact Stipulation filed September 24, 2007. Debtor enrolled two farms

in FSA's 2005 Direct and Counter-cyclical Program (DCP) on February 11, 2005.  The contract for Farm 4306 identifies Debtor as sole owner or producer with a 100% payment share in the DCP payments (Ex. 302).  The contract for Farm 4307 also lists Debtor as primary owner or producer with a 100% payment share (Ex. 303).  It identifies Irene Walterman as a secondary owner or producer with a 0% payment share.  Dale Launstein signed both contracts on behalf of Debtor under an FSA Power of Attorney dated October 7, 2002 (Ex. 301).  FSA paid Debtor advance direct payments totaling $5,133 for Farm 4306 on February 14, 2005 (Ex. 309).  It paid Debtor advance direct payments totaling $5,309 for Farm 4307 on May 17, 2005 (Ex. 310).

Mr. Launstein signed 2005 DCP contracts for Farms 4306 and 4307 in his individual capacity on September 14, 2005.  The contract for Farm 4306 identifies Mr. Launstein as primary owner or producer with a 100% payment share in the DCP payments (Ex. 304).  It lists Debtor as a secondary owner or producer with a 0% payment share.  The contract for Farm 4307 lists Mr. Launstein as primary owner or producer with a 100% payment share and identifies Irene Walterman as a secondary owner or producer with a 0% payment share (Ex. 305).

Debtor refunded the advance direct payments it received from FSA for Farms 4306 and 4307, totaling $10,442, by business check dated September 15, 2005 (Ex. 308).  FSA accepted Mr. Launstein's DCP contracts that same day (Exs. 304 and 305).  FSA later paid Mr. Launstein advance direct payments for both Farms (Exs. 306 and 307).

Creditors filed an involuntary Chapter 7 petition against Debtor on October 21, 2005.  Trustee initiated this adversary action on February 16, 2007 to recover the funds Debtor transferred to FSA on September 15, 2005.

## CONCLUSIONS OF LAW

FSA asserts that the transfer is nonavoidable because Debtor made the payment in the ordinary course of business or according to ordinary business terms under the "Succession-in-Interest" rules which govern FSA.  Alternatively, FSA claims it is immune from recovery under § 550(a)(1) because it was not an initial transferee.

FSA also asserts in its brief that Debtor never had an interest in the funds under § 547(b).  FSA appears to be arguing that Debtor did not have an "interest in the property" under § 547(b).  The Court previously resolved this contention in favor

2

of Trustee by granting Trustee summary judgment on her case in chief.  FSA consented to this Order.  Finding a preference necessarily requires finding that Debtor had an interest in the property transferred.  FSA is barred by the Order granting Trustee summary judgment from further attacking any of the elements contained in § 547(b).

## 11 U.S.C. § 547(c)(2)

Section 547(c)(2) states:

> (c) The trustee may not avoid under this section a transfer-
>
>> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was-
>>
>>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>>>
>>> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

A creditor facing a preference action must prove, by a preponderance of the evidence, two elements to demonstrate the nonavoidability of a transfer under § 547(c)(2).  11 U.S.C. § 547(c)(2); 11 U.S.C. § 547(g).  First, a creditor must demonstrate that the debt was incurred in the ordinary course of business or financial affairs for both parties.  11 U.S.C. § 547(c)(2); In re Armstrong, 291 F.3d 517, 527 (8th Cir. 2002).  That is, the transaction creating the debt must be ordinary for both parties.  Armstrong, 291 F.3d at 527.  If it is a first-time transaction, the transaction must be typical compared to both parties' past dealings with similarly-situated parties.  In re Ahaza Sys., Inc., 482 F.3d 1118, 1125 (9th Cir. 2007); Kleven v. Household Bank F.S.B., 334 F.3d 638, 643 (7th Cir. 2003).

Second, a creditor must establish that the transfer occurred in the ordinary course of business or financial affairs between the debtor and creditor or that the transfer was made according to ordinary business terms.  11 U.S.C. § 547(c)(2)(A)-(B); In re U.S.A. Inns of Eureka Springs, Ark., Inc., 9 F.3d 680, 684-685

3

(8th Cir. 1993). To demonstrate ordinary course of business, the creditor must show that the transfer at issue is consistent with the pattern of previous transfers between the particular parties. <u>U.S.A. Inns</u>, 9 F.3d at 682; <u>In re Laclede Steel Co.</u>, 271 B.R. 127, 131 (B.A.P. 8th Cir. 2002), <u>aff'd per curiam</u>, 47 Fed. Appx. 784, (8th Cir. 2002). This pattern includes the length of the parties' transactional relationship, the amount and form of tender, the behavior of the parties, and the timing of the transfers. <u>Laclede Steel</u>, 271 B.R. at 131-32. When there is no established relationship between the parties, the creditor must demonstrate the parties' conformity with contract terms. <u>Ahaza</u>, 482 F.3d at 1125; <u>Kleven</u>, 334 F.3d at 643.

To establish that the transfer occurred under ordinary business terms the creditor must first identify the relevant industry and provide evidence of industry practice. <u>U.S.A. Inns</u>, 9 F.3d at 685. Ordinary business terms include the entire range of typical business practices for the relevant industry. <u>Id.</u> at 684; <u>In re Tolona Pizza Products Corp.</u>, 3 F.3d 1029, 1033 (7th Cir. 1993). The creditor must demonstrate that the transfer was made in a manner falling within these practices. <u>U.S.A. Inns</u>, 9 F.3d at 685-86. Only dealings that are idiosyncratic or extraordinary fall outside ordinary business terms. <u>Id.</u>

## DIRECT AND COUNTER-CYCLICAL PROGRAM

Congress authorized the Direct and Counter-cyclical Program (DCP) in the 2002 Farm Bill. The Farm Security and Rural Investment Act of 2002, Pub. L. 107-171, 116 Stat. 134 (2002); 7 U.S.C. §§ 7911-18. Under the DCP, crop producers who meet certain requirements receive direct and counter-cyclical payments. 7 U.S.C. § 7901(13)-(14). Participating producers must sign an annual DCP contract (CCC-509) for each farm and abide by certain guidelines. 7 U.S.C. § 7901(15). Producers must refund any advance payments if they terminate their interest in a farm during the contract period. 7 U.S.C. § 7913(d)(4).

The Succession-in-Interest rules govern FSA's actions when a producer alters his or her interest in an enrolled farm. Ex. 311, ¶ 393. A succession occurs when there is any transfer or change of interest in an enrolled farm during the contract period. <u>Id.</u> at ¶ 393 A. When a full succession occurs after an advance payment, FSA must initiate debt collection activities against the predecessor to recover the payment. <u>Id.</u> at ¶ 393 D, F. FSA cannot approve a successor's CCC-509 until these actions occur. <u>Id.</u> at ¶ 393 C. The successor may receive DCP payments after FSA approves the revised CCC-509. <u>Id.</u> at ¶ 393 G.

## ANALYSIS

FSA must first demonstrate that the transaction giving rise to the debt was ordinary as between it and Debtor to successfully assert the ordinary course of business defense. Debtor and FSA signed standard 2005 DCP contracts for Farms 4306 and 4307. FSA made advance payments totaling $10,442 to Debtor under these contracts. Mr. Launstein later signed 2005 DCP contracts in his own name for the same two Farms. These new contracts indicated to FSA that successions-in-interest had occurred. Debtor refunded the advance payments, as required by contract terms, on September 15, 2007. On these facts alone, the Court would find that Debtor incurred the debt in the ordinary course of both parties' business or financial affairs.

The evidence relating to Farm 4307 is ambiguous and requires clarification. The parties expressly stipulate that no one, other than Debtor, leased Farm 4307 for 2005 (Am. Fact Stip., at ¶ 12, 22). If the parties mean that Debtor retained its interest in Farm 4307, the stipulation contradicts the record and prior proceedings in the case.

This Court's previous Order granting Trustee summary judgment on her case in chief necessarily includes a finding that Debtor made the payment on account of an antecedent debt (Doc. 19). 11 U.S.C. § 547(b)(2). An Order entered pursuant to the parties' consent has preclusive effect. U.S. ex rel. Shell Oil Co. v. Barco Corp., 430 F.2d 998, 1001 (8th Cir. 1970); Klingman v. Levinson, 831 F.2d 1292, 1296 (7th Cir. 1987). As Debtor's payment to FSA is on account of an antecedent debt, a succession-in-interest must have occurred. Furthermore, Mr. Launstein's 2005 DCP contract for Farm 4307 indicates a succession-in-interest occurred (Ex. 305).

The parties' stipulation may be interpreted to mean merely that Debtor terminated its interest in Farm 4307 by means other than a lease. The record and prior proceedings support this reading of the stipulation. Given the previous Order in this proceeding and the evidence in the record, the Court finds that a succession-in-interest occurred for both Farm 4306 and Farm 4307. As described above, Debtor and FSA entered standard DCP contracts under ordinary circumstances and acted in accordance with the contracts. The Court therefore finds that Debtor incurred the debt in the ordinary course of both parties' business or financial affairs.

FSA must next establish that the transfer occurred either in the ordinary course of business affairs or according to ordinary

5

business terms.  The record reflects only a limited history of transfers from Debtor to FSA.  It does not indicate the purpose for any transfer except the one at issue.  Therefore, the Court does not have sufficient information to determine whether the transfer at issue is consistent with the parties' past pattern of behavior.

A first-time transaction, however, may be in the ordinary course if FSA can demonstrate that the transfer was in conformity with contract terms.  Under DCP contract terms, producers must notify FSA when any succession occurs and must refund advance payments.  FSA requested repayment from Debtor after Mr. Launstein filed his individual CCC-509 contracts for the Farms.  Debtor refunded the advance payments the following day.  There is no suggestion in the record that Debtor's payment was unusually hasty or delayed or that FSA used extraordinary or undue means to collect the payment.  Nor is there any suggestion that FSA does not generally enforce contract terms against other producers.  Rather, this was a routine repayment made by an ineligible producer according to contract terms.

Trustee argues the payment was unusually large compared with previous transfers between Debtor and FSA and that this inconsistency means the transaction falls outside the ordinary course of business.  This argument accurately states the standard but is not supported by the record which reflects some transactions between Debtor and FSA but does not reflect the nature or purpose of the previous transfers.  Therefore, there is no pattern for the Court to analyze.  Analyzed as a first-time transaction, Debtor's payment conformed with contract terms.  The Court finds that the transfer occurred in the ordinary course of business or financial affairs between the parties under § 547(c)(2)(A) and Trustee may not avoid it.

The transfer is also nonavoidable under ordinary business terms.  The relevant industry in this case is the crop subsidy industry.  FSA comprises most if not all of this industry.  Consequently, a transaction is made under ordinary business terms if it conforms to FSA's practices and procedures.  The Succession-in-Interest rules state that producers must refund any advance payments if they terminate their interest in an enrolled farm.  Here, Debtor terminated its interest in the Farms.  It subsequently refunded the advance payments to FSA by writing a business check.  The Court finds that the transfer was made according to ordinary business terms under § 547(c)(2)(B) and Trustee may not avoid it.

## CONCLUSION

Debtor's September 15, 2005 payment of $10,442 to FSA is not avoidable as a preferential transfer. Debtor incurred the underlying debt in the ordinary course of both parties' business or financial affairs. It made the payment according to contract terms in the ordinary course of business under § 547(c)(2)(A). Additionally, Debtor repaid the debt according to ordinary business terms under § 547(c)(2)(B).

**WHEREFORE**, Trustee's Complaint to Recover Preference is DENIED.

DATED AND ENTERED: November 27, 2007

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE